ZACHARY PULERA,

        Plaintiff,

   v.

VICTORIA SARZANT; DENNIS ZAWILLA;        Case No:
SHANE GERBER; CHERYL SLATER;
DENNIS REMUS; ROBERT PALLAMOLLA;
BRUCE CLEMENS; DUANE CORSO; DARRON
NEWTON; CHARLES SMITH; MARK SCHLECHT;
JOHN DOE 1-5; DAVID G. BETH;
1000 55th Street
Kenosha, WI 53233

And,

KENOSHA COUNTY, a municipal corporation,
1010 56th Street
Kenosha, WI 53140

And,

VISITING NURSE COMMUNITY CARE, INC.,
600 52nd Street, Suite 300
Kenosha, WI 53140

        Defendants.

---

## COMPLAINT AND JURY DEMAND

---

      NOW COMES the above named Plaintiff, by his attorneys, JUDGE, LANG & KATERS, LLC,

and as for his claims for relief against the above named Defendants, alleges and shows the Court as

follows:

### PRELIMINARY STATEMENT

      1.     This is an action which involves Kenosha County, the Kenosha County Sheriff's

Department (hereinafter, "Sheriff's Department"), the Kenosha County Pre-Trial Facility

1

(hereinafter, "Jail"), along with Sheriff David G. Beth and the individually named Defendants' methods of infringing on and violating the Constitutional, Civil and Statutory rights of Plaintiff Zachary Pulera (hereinafter, "Pulera"), which was the substantial cause of Plaintiff's injuries. Pulera was subjected to unconstitutionally inadequate health care and treatment, which involved the wanton and unnecessary infliction of pain, and his eventual hanging and asphyxiation.

2. Plaintiff brings this action pursuant to Title 42 of the United States Code, Sections 1983 and 1985 for violations of Plaintiff's Eighth and Fourteenth Amendment Rights under the United States Constitution, his Rights under Article I, Sections One and Six of the Wisconsin Constitution, and his Wisconsin Statutory and Common Law Rights.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation, under color of state law, of Plaintiff's Civil Rights. This Court also has supplemental jurisdiction over Plaintiff's state law claims which arise out of the same facts common to Plaintiff's federal claims.

4. The amount in controversy exceeds $75,000 exclusive of interests and costs.

5. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the United States District Court for the Eastern District of Wisconsin because it is the judicial district in which the events giving rise to the claim occurred.

## PARTIES

6. The Plaintiff, Zachary Pulera, is an adult citizen of the United States and a resident of the State of Wisconsin. At all material hereto, Plaintiff Zachary Pulera was an inmate residing at the Kenosha County Pre-Trial Facility in the County of Kenosha, City of Kenosha, and entitled

2

to all rights, privileges and immunities accorded all residents of the State of Wisconsin and as a citizen of the United States.

7.      Defendant Victoria Sarzant, Correctional Officer # 1354 (hereinafter, "Sarzant") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed as a Correctional Officer at the Kenosha County Jail by the Defendant Kenosha County and was responsible for the safe, secure, and humane treatment of all Kenosha County Jail inmates, including Pulera, on April 21, 2012. At all times material hereto, Defendant Sarzant was acting under the color of law, within the scope of her employment and authority, and pursuant to Kenosha County's policies, customs and practices which were the moving force behind the constitutional violations asserted herein.

8.      Defendant Dennis Zawilla, Direct Supervision Officer # 1570 (hereinafter, "Zawilla") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed as a Direct Supervision Officer at the Kenosha County Jail by the Defendant Kenosha County and was responsible for the safe, secure, and humane treatment of all Kenosha County Jail inmates, including Pulera, on April 21, 2012. At all times material hereto, Defendant Zawilla was acting under the color of law, within the scope of his employment and authority, and pursuant to Kenosha County's policies, customs and practices which were the moving force behind the constitutional violations asserted herein.

9.      Defendant Shane Gerber, Admission/Release Specialist # 361 (hereinafter, "Gerber"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed as an Admission/Release Specialist at the Kenosha County Jail by Defendant Kenosha County and was responsible for the safe, secure, and humane treatment of all Kenosha County Jail inmates, including Pulera, on April 21, 2012. At all times material hereto, Defendant Gerber was acting under the color of law, within the scope of his employment and

3

authority, and pursuant to Kenosha County's policies, customs and practices which were the moving force behind the constitutional violations asserted herein.

10. Defendant Sheryl Slater, Admission/Release Specialist # 372 (hereinafter, "Slater"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed as an Admission/Release Specialist at the Kenosha County Jail by the Defendant Kenosha County and was responsible for the safe, secure, and humane treatment of all Kenosha County Jail inmates, including Pulera, on April 21, 2012. At all times material hereto, Defendant Slater was acting under the color of law, within the scope of her employment and authority, and pursuant to Kenosha County's policies, customs and practices which were the moving force behind the constitutional violations asserted herein.

11. Defendant Dennis Remus, Correctional Officer # 1330 (hereinafter, "Remus"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed as a Corrections Officer at the Kenosha County Jail by the Defendant Kenosha County and was responsible for the safe, secure, and humane treatment of all Kenosha County Jail inmates, including Pulera, on April 21, 2012. At all times material hereto, Defendant Remus was acting under the color of law, within the scope of his employment and authority, and pursuant to Kenosha County's policies, customs and practices which were the moving force behind the constitutional violations asserted herein.

12. Defendant Robert Pallamolla, Correctional Officer # 1204 (hereinafter, "Pallamolla") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed as a Correctional Officer at the Kenosha County Jail by the Defendant Kenosha County and was responsible for the safe, secure, and humane treatment of all Kenosha County Jail inmates, including Pulera, on April 21, 2012. At all times material hereto, Defendant Pallamolla was acting under the color of law, within the scope of his employment and

4

authority, and pursuant to Kenosha County's policies, customs and practices which were the moving force behind the constitutional violations asserted herein.

13. Defendant Bruce Clemens, Correctional Officer # 1213 (hereinafter, "Clemens") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed as a Correctional Officer at the Kenosha County Jail by the Defendant Kenosha County and was responsible for the safe, secure, and humane treatment of all Kenosha County Jail inmates, including Pulera, on April 21, 2012. At all times material hereto, Defendant Clemens was acting under the color of law, within the scope of his employment and authority, and pursuant to Kenosha County's policies, customs and practices which were the moving force behind the constitutional violations asserted herein.

14. Defendant Duane Corso, Correctional Officer # 1227 (hereinafter, "Corso") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed as a Correctional Officer at the Kenosha County Jail by the Defendant Kenosha County and was responsible for the safe, secure, and humane treatment of all Kenosha County Jail inmates, including Pulera, on April 21, 2012. At all times material hereto, Defendant Corso was acting under the color of law, within the scope of his employment and authority, and pursuant to Kenosha County's policies, customs and practices which were the moving force behind the constitutional violations asserted herein.

15. Defendant Darron Newton, Corporal # 1443, (hereinafter, "Newton") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed as a Corporal at the Kenosha County Jail by the Defendant Kenosha County and was responsible for the safe, secure, and humane treatment of all Kenosha County Jail inmates, including Pulera, on April 21, 2012. At all times material hereto, Defendant Newton was acting under the color of law, within the scope of his employment and authority, and pursuant to

5

Kenosha County's policies, customs and practices which were the moving force behind the constitutional violations asserted herein.

16. Defendant Charles Smith, Chief Deputy #079, (hereinafter, "Smith") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed as the Chief Deputy at the Kenosha County Sheriff's Department by the Defendant Kenosha County and was responsible for the safe, secure, and humane treatment of all Kenosha County Jail inmates, including Pulera, on April 21, 2012. Defendant Smith also oversaw, supervised and had direct control over the management and operations of the Sheriff's Department, including the Department's policies, customs and practices.

17. Defendant Mark Schlecht, Lieutenant #108, (hereinafter, "Schlecht") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed as and Lieutenant and Pre-Trial Facility Administrator at the Kenosha County Sheriff's Department by the Defendant Kenosha County and was responsible for the safe, secure, and humane treatment of all Kenosha County Jail inmates, including Pulera, on April 21, 2012. Defendant Schlecht also oversaw, supervised and had direct control over the management and operations of the Sheriff's Department, including the Department's policies, customs and practices.

18. Defendant John Doe 1, is an unnamed adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed as a Corrections Officer at the Kenosha County Jail by the Defendant Kenosha County and was responsible for the safe, secure, and humane treatment of all Kenosha County Jail inmates, including Pulera, on April 21, 2012. At all times material hereto, Defendant John Doe 1 was acting under the color of law, within the scope of his/her employment and authority, and pursuant to Kenosha County's

6

policies, customs and practices which were the moving force behind the constitutional violations asserted herein.

19. Defendants John Doe 2-4, are unnamed adult citizens of the United States and resident of the State of Wisconsin, and at all times material hereto, were employed at the Kenosha County Jail by the Defendant Kenosha County and/or Defendant Visiting Nurse Community Care, Inc., and were responsible for the safe, secure, and humane treatment of all Kenosha County Jail inmates, including Pulera, on April 21, 2012. At all times material hereto, Defendants John Doe 2-4 were acting under the color of law, within the scope of their employment and authority, and pursuant to Kenosha County's policies, customs and practices which were the moving force behind the constitutional violations asserted herein.

20. Defendant John Doe 5, Captain Of Detentions, is unnamed adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed as the by Kenosha County as the Captain of Detentions of the Kenosha County Jail, and as such, was responsible for the safe, secure, and humane treatment of all inmates in Kenosha County's custody, including Pulera, on April 21, 2012. Defendant John Doe 5 also oversaw, supervised and had direct control over the management and operations of the entire Kenosha County Jail, including the Jail's policies, customs and practices.

21. Defendant David G. Beth, Kenosha County Sheriff, (hereinafter, "Beth"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by Defendant Kenosha County as the Sheriff of the Kenosha County Sheriff's Department, and as such, was responsible for the safe, secure, and humane treatment of all inmates in Kenosha County's custody, including Pulera, on April 21, 2012. Defendant Beth also oversaw, supervised and had direct control over the management and operations of the entire Sheriff's Department, including the Department's policies, customs and practices.

7

22.     Defendant Kenosha County, with offices at 1010 56th Street, Kenosha, WI 53140, and offices of its Corporation Counsel, Bernard Vash, at 912 56th Street, Room LL13, Kenosha, WI 53140, at all times material hereto, was a Municipal Corporation organized under the laws of the State of Wisconsin and was at all times responsible for training and supervising employees of the Kenosha County Sheriff's Department, and for the creation and implications of policies and procedures of the Sheriff's Department which was an agent of Kenosha County.

23.     Defendant Visiting Nurse Community Care, Inc., (hereinafter, "VNC"), with its Principal Office and Registered Agent's Office located at 600 52nd Street, Suite 300, Kenosha, WI 53140, is a health care provider, incorporated and operated in the State of Wisconsin for purposes of providing medical care to patients, and is responsible for the acts of its employees and agents involved in health care services provided to patients therein. At all times material hereto, Defendant VNC provided health care services to Kenosha County Jail Inmates, including Pulera.

24.     All of the Defendants are sued in their individual and official capacities. At all relevant times, all Defendants were acting under the color of state law; pursuant to their authority as officials, agents, contractors or employees of Kenosha County; within the scope of their employment as representatives of public entities, as defined in 42 U.S.C. §12131(1), and were deliberately indifferent to the Constitutional and statutory rights of Pulera.

## FACTUAL ALLEGATIONS

### Arrest and Booking of Pulera on April 21, 2012

25.     Plaintiff realleges and incorporates herein by reference the allegations of the preceding paragraphs.

26.     On April 21, 2012 at approximately 2:24 a.m., Pulera was arrested by the Kenosha Police Department and charged with one count of Felony Bail Jumping for violating the conditions of his bond by consuming alcohol.

8

27.     At the time of his arrest on April 21, 2012, Pulera was on Federal Probation and was also on bond for a pending case in Kenosha County.

28.     Following his arrest, Pulera was then transported to the Kenosha County Jail be held on the Felony Bail Jumping charge and for a U.S. Marshall probation hold.

29.     On April 21, 2012 at approximately 5:20 a.m., while being booked into the Jail, Pulera began to clearly exhibit signs of severe depression, distress, and self-harm tendencies while in a holding cell at the Jail.

30.     These signs included Pulera was crying profusely and repeatedly screaming that his life was over and that he has nothing to live for.

31.     Pulera's cries for help were documented by Defendant Sarzant who completed a Zone One Protective Holding Report in which he stated, "I/M is standing on bench and shouting & pounding on the door." This report was later submitted to Defendant Zawilla who signed the report as the supervisor.

32.     Despite the obvious warning signs that Pulera may be a harm to himself, neither Defendant Sarzant, Defendant Zawilla or any other Jail employee placed Pulera on suicide watch, called for a medical/mental health professional, or took any action whatsoever to ensure that Pulera was not a danger to himself.

33.     On April 21, 2012 at approximately 7:02 a.m., Pulera was interviewed by Defendant Gerber to complete the Medical/Mental Screening Medical Questionnaire.

34.     While undergoing the Medical/Mental Screening Medical Questionnaire, Pulera informed Defendant Gerber that he was distraught and depressed because his mother had committed suicide approximately one month prior to his arrest.

35.     Pulera also informed Defendant Gerber that he was prescribed clonazepam to treat his anxiety by his primary doctor, Dr. Mohis.

9

36.     Upon hearing this information, Defendant Gerber did not place Pulera on suicide watch, called for a medical/mental health professional, or took any action whatsoever to ensure that Pulera was not a danger to himself.

37.     On April 21, 2012, Defendant Sarzant completed a Medical/Mental Screening Visual Observation Report pertaining to the intake of Pulera.

38.     The Medical/Mental Screening Visual Observation Report required Defendant Sarzant to make determinations for several things, including mental health needs such as whether an inmate's behavior suggest need for immediate psychiatric treatment.

39.     Despite the serious mental health warnings already displayed by Pulera and information gathered by Defendant Sarzant who is not a medical/mental health professional and lacked any training in medical/mental health, hastily concluded that Pulera did not have a need for psychiatric/psychological treatment

40.     On the Medical/Mental Screening Visual Observation Report, Defendant Sarzant noted that Pulera was proscribed clonazepam and tramadol.

41.     It was and/or should have readily apparent to Defendants at this stage of Pulera's booking process that he was an inmate who required a high level of supervision, mental health treatment and medications to deal with his anxiety and depression.

### *Plaintiff Pulera's Previous Incarcerations At The Jail*

42.     Moreover, additional information was readily available to the Defendants, regarding Pulera, through the records of his previous incarcerations at the Jail.

43.     On or about March 6, 2011, Pulera was booked into the Jail for probation violations by the Kenosha Police Department.

10

44.     While completing the Medical/Mental Medical Questionnaire on or about March 6, 2011, Pulera informed the Admission/Release Specialist of several alarming pieces of information, including:

   a. That he was upset over his brother going to prison;
   b. That he had been in a mental institution in the past;
   c. That he had in fact contemplated suicide in the past;
   d. That he was under the care of a psychiatrist for the treatment of depression and anxiety; and,
   e. That he was prescribed several medications to deal with medical and mental health problems.

45.     On or about October 4, 2011, Pulera was booked into the Jail for a battery charge by the Kenosha Police Department.

46.     On or about October 4, 2011, while being detained at the Jail, Pulera submitted an Inmate Medical Request Form, where he stated in the relevant section, "I really need my medicin [sic] my paxil and colozopam [sic] for anxiety and dippreson [sic] and panic attacks [sic]... ."

47.     On or about October 6, 2011, Pulera submitted another Inmate Medical Request Form, where he stated in the relevant section, "Why did I not get the rest of my meds my paxil [sic]. I just lost my brother he just killed himself and I am really depressed & need help my mind [sic] is really mestup [sic] because of that and these charges."

48.     On or about October 7, 2011, Pulera underwent a Mental Health Risk Assessment at the Jail.

49.     During the October 7, 2011 Mental Health Risk Assessment, the crisis worker performing the assessment noted and/or observed several key warning signs that Pulera suffered from severe mental health issues and that he was a danger to himself. These notations/observations include:

   a. That Pulera's brother had recently committed suicide approximately one month prior to the date of the assessment;
   b. That Pulera had indicated that he currently had thoughts of not wanting to live;

11

      c. That Pulera was currently on medication for mental health issues;

      d. That Pulera was currently seeing a doctor for mental health issues;

      e. That Pulera was depressed; and,

      f. That Pulera's eyes were bloodshot from crying.

50. As a result of the October 7, 2011 Mental Health Risk Assessment, the crisis worker's primary recommendation was that Pulera be segregated and placed on Level 2 Special Watch Status.

51. On October 9, 2011, Pulera once again submitted another Inmate Medical Request Form pleading for assistance with his depression. In this Request, Pulera stated, "[P]lease can I get my Paxil please am so depressed [sic] my brother just killed him self [sic] an there are other verey [sic] big reason."

52. A Placement Review of Detainee in Observation was performed on October 11, 2011 relating to Pulera's Level 2 Special Watch Status. Following the review, the mental health professional decided that Pulera continue Level 2 Special Watch Status to, "due presentation and to monitor for continued stability."

### *April 21, 2012 Classification of Pulera and Days Leading up to Suicide*

53. Despite having actual notice of the extreme depression and anxiety Pulera was suffering on April 21, 2012, at no time was Pulera comprehensively screened or properly classified. Pulera was never placed on suicide watch while in the custody of the Defendants and never given the care, treatment and medications he required.

54. The classification also lacked any thorough mental health evaluation conducted by any true mental health professional.

55. Defendants never reviewed, considered, addressed, reconciled, synthesized or responded to the aforementioned history of Pulera's serious psychological and emotional pathology, despite their knowledge of the recognizable and significant likelihood that Pulera would attempt to commit suicide. Defendants also had easy access to Pulera's jail file, which contained

12

information pertaining to his previous stays at the jail at the time of his booking and classification on April 21, 2012.

56. The failure to appropriately classify and care for Pulera, despite actual notice of his history at the time of his booking on April 21, 2012 at the Jail, was the result of the policies, customs and practices of the County Defendants. These policies, customs and practices affirmatively compelled Defendants' failure to address Pulera's reported history of mental problems and suicidal tendencies in any operational fashion.

57. The failure to appropriately classify and care for Pulera despite actual notice of his serious risk of suicide, furthermore, was the result of Defendants failure to staff, train, supervise and/or discipline County corrections officers, including Defendant Sarzant, Defendant Zawilla, Defendant Gerber, Defendant Slater, Defendant Newton, Defendant Clemens, Defendant Corso, Defendant Remus, Defendant Pallamolla, and Defendants John Doe 1, with regard to the reasonable, appropriate, and mandatory precautions that must be taken for inmates who display suicidal tendencies and/or circumstances.

58. As a result of these and other failures, lapses, and violations by Defendants, Pulera was neither properly classified as someone at risk of injury to himself and in need of mental health services nor placed on suicide watch. Pulera was thus never given the care and treatment required of his condition.

59. Instead, Pulera was inappropriately and improperly assigned to Cell 4 in Zone 5 of H-Block, a general population unit. In H-Block, Pulera was provided access to a bed sheet and cell bars, which he could and did utilize to attempt suicide by hanging. This assignment was made with deliberate indifference because Pulera had yelled suicidal statements while in booking; had expressed thoughts of severe depression and the circumstances both on April 21, 2012 and in recent stays at the Jail; had informed Defendants in the past that he had been treated at a mental

13

institution previously; had expressed feelings of hopelessness and not want to live; and, that Pulera was currently prescribed medications for depression and anxiety.

60.     For the next two days, Pulera kept to himself, was visibly depressed, and suffering withdrawal symptoms from the deliberate and/or negligent withholding of his medications. The bouts of extreme depression and weeping were visible to Defendant Newton, Defendant Clemens, Defendant Corso, Defendant Remus, Defendant Pallamolla, and Defendant John Does 1-4, and therefore constructively known to Defendant Kenosha County.

61.     Pulera's withdrawal symptoms specifically included sleep disturbance, irritability, increased anxiety, confusion, cognitive difficulty, and thoughts of suicide. The Defendants knew or should have known that these types of withdrawal symptoms are commonly associated with inmates going through withdrawals.

62.     The withdrawal symptoms Pulera was suffering from were or should have been readily apparent to Defendants

63.     Prior to the Pulera's suicide attempt, Pulera pleaded for help by submitting three separate Inmate Medical Request Forms, begging for medical and mental health help.

64.     On April 21, 2012, Pulera submitted his first Inmate Medical Request to Defendant Pallamolla, in which he stated, "I need my colozopam [sic] my family is dropping them off for my pain [illegible word] and depreson [sic]."

65.     Instead of responding in a reasonable and acceptable manner, Defendant Nurse John Doe 2, deliberately failed to take any action and simply stated, "While you are under the care of the jail MD and will be notified of the medications brought in."

66.     On April 21, 2012, Pulera submitted his second Inmate Medical Request to Defendant John Doe 1, in which he wrote, "My hart [sic] hertzt [sic] I can't breth [sic] I need my medes [sic]

14

or I can die. My heart is pounding they are here I need you to please bring me my meds A.S.A.P. [sic] Thank you.

67.     Once again, Defendant Nurse John Doe 3, deliberately failed to take any reasonable or acceptable action and simply stated, "the jail MD has not set up any medications at this time."

68.     On April 22, 2012, Pulera submitted his third Inmate Medical Request to Defendant Remus, in which he stated, "I cant [sic] sleep I am throwing up and I am dizzy I can't breathe I need my blood pressure tooking [sic] please see me. My brother and mother just died and I need my colozopam [sic] I am sick."

69.     Defendant Nurse John Doe 4, deliberately failed to take any reasonable or acceptable action in response to this request and simply stated, "Your blood pressure will be checked."

70.     Tragically, the Defendants failed to respond in any reasonable manner to this known, obvious, recognizable and significant warning signal that Pulera needed care, treatment and his medications.

71.     Moreover, William Pulera delivered Plaintiff Pulera's tramadol and clonazepam prescriptions to the Jail on April 21, 2012 at approximately 2:35 pm. and were accepted by Defendant Slater. However, these medications were never provided to Pulera.

72.     This failure was due to the Defendant County's polices, customs and practices. It was also due to Defendant County's failure to train, supervise and discipline Defendant Officers and supervisors, among others.

*Suicide Attempt on April 23, 2012*

73.     On or about April 23, 2012 at approximately 1:40 a.m., Pulera attached one end of his bed sheet to his upper cell bars and fashioned a noose out the other end and attempted suicide by hanging.

74.     Pulera's cellmate, Dalton Alleman ("hereinafter, Alleman"), was awoken by the noise coming from Pulera as he hung from the cell bars. Alleman then began banging on the cell doors and yelling for the guards.

75.     Other inmates in H-Block were awoken as a result of Alleman's banging and screaming, and they too began yelling and rattling their cell bars for the guards.

76.     After a lengthy and detrimental delay, the inmates' yells and pounding finally alerted Defendant Clemens and Defendant Corso at 1:45 a.m., who were fraternizing in the corridor between H-Block and I-Block (hereinafter, "Guard Corridor").

77.     Defendant Corso then entered H-Block to investigate the loud yells and banging. Upon entering the H-Block day room, Defendant Corso observed Pulera hanging by his bed from his upper cell bars.

78.     Defendant Corso then notified Defendant Clemens of the situation, who then returned to the Guard Corridor to open the sally port gate and notify other officers of the emergency.

79.     Once the sally port gate and Pulera's cell door were opened, Defendant Corso entered Pulera's cell and attempted to hold Pulera up.

80.     Despite having the "911 knife" available and within reach of Defendant Clemens in the Guard Corridor, Defendant Clemens deliberately chose to stay in the Guard Corridor and wait for additional support to arrive.

81.     Defendant Clemens' willful and wanton decision not to cut Pulera down until other officers arrived allowed for several crucial minutes to pass by.

82.     After several vital minutes passed, Defendant Newton arrived at the Guard Corridor. Upon arrival, Defendant Clemens, who was still sitting idly by in the Guard Corridor, gave Defendant Newton the "911 knife" to cut Pulera down.

16

83.     Defendant Newton subsequently entered Pulera's cell, cut the sheet from the cell bars, and assisted Defendant Corso in lowering Pulera to the ground.

84.     Upon being placed on the floor outside his cell, Pulera was unresponsive and had turned blue in the face.

85.     Despite the call for assistance with Pulera's suicide attempt made by Defendant Clemens, the Defendants deliberately, willfully an wantonly waited until after Pulera was cut down from the bars and placed on the floor to call for jail medical personnel and Kenosha Fire Department and Rescue.

86.     HSU Nurse Silvia arrived at H-Block thereafter to check Pulera's vitals and place and oxygen mask on him. Pulera was unresponsive to HSU Silvia and had labored breathing.

87.     After several more precious minutes lapsed, the Kenosha Fire Department and Rescue arrived on the scene to transport Pulera to the Kenosha Hospital and Medical Center via ambulance.

88.     Upon arrival at the Kenosha Hospital and Medical Center Emergency Room, Pulera was assessed by Dr. Hahn, who determined that due to the grave nature and severity of Pulera's injuries, he should be transported to Froedtert Hospital in Milwaukee.

89.     Pulera was then transported via ambulance to Froedtert at approximately 4:38 a.m. and subsequently arrived at the Froedtert Hospital at approximately 5:35 a.m., where he was admitted into Froedtert's Nuero-Intensive Care Unit.

## VIOLATIONS OF LAW

### COUNT I
### CRUEL AND UNUSUAL PUNISHMENT
### IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS
### TO THE UNITED STATES CONSTITUTION AGAINST DEFENDANTS: SARZANT, SAWILLA, GERBER, SLATER, REMUS, PALLAMOLLA, CLEMENS, CORSO, NEWTON, SMITH, SCHLECHT, BETH, JOHN DOE 1, JOHN DOE 5, AND KENOSHA COUNTY

90.     Plaintiff realleges and incorporates herein by reference each and every allegation of the preceding paragraphs.

91.     Defendants' deliberate indifference to and complete failure to address Pulera's serious medical/mental health needs was a substantial cause of Pulera's avoidable pain, suffering, embarrassment and subsequent life altering injuries.

92.     The Defendants' policies, customs, practices, acts, and/or omissions evidence and constitute deliberate indifference to the serious health care needs of all inmates in their custody, including Pulera, and violate the cruel and unusual punishment clause of the Eighth Amendment, made applicable to the States through the Fourteenth Amendment to the United States Constitution.

93.     The Defendants' policies, customs, practices, acts, and/or omissions placed Pulera at an unreasonable, continuing and foreseeable risk of substantial pain and suffering.

94.     As a direct and proximate result of Defendants' unconstitutional policies, customs, practices, acts, and/or omissions, Pulera suffered horrific physical, psychological, and emotional injury.

## COUNT II
### CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF SECTION SIX OF THE STATE OF WISCONSIN CONSTITUTION AGAINST DEFENDANTS: SARZANT, SAWILLA, GERBER, SLATER, REMUS, PALLAMOLLA, CLEMENS, CORSO, NEWTON, SMITH, SCHLECHT, BETH, JOHN DOE 1, JOHN DOE 5, AND KENOSHA COUNTY

95.     Plaintiff realleges and incorporates herein by reference each and every allegation of the preceding paragraphs.

96.     The Defendants' policies, customs, practices, acts, and/or omissions evidence and constitute deliberate indifference to the serious health care needs of all inmates in their custody, including Pulera, and violate the cruel and unusual punishment clause of Section Six of the State of Wisconsin Constitution.

18

97.     The Defendants' policies, customs, practices, acts, and/or omissions placed Pulera at an unreasonable, continuing and foreseeable risk of substantial pain and suffering.

98.     As a direct and proximate result of Defendants' unconstitutional policies, customs, practices, acts, and/or omissions, Pulera suffered horrific physical, psychological, and emotional injury.

**COUNT III**
**MONELL LIABILITY – KENOSHA COUNTY**

*A. Failure to Train and Adequately Supervise – Kenosha County*

99.     Plaintiff realleges and incorporates herein by reference each and every allegation of the preceding paragraphs.

100.    The Defendant Kenosha County failed to adequately train officers, correctional employees and medical employees at all times relevant to this complaint, on how to deal with inmates suffering from serious medical/mental health conditions and individuals in custody in need of immediate mental health care, how to recognize suicidal inmates, how to react to serious medical emergencies, how to conduct wellness checks on individuals in custody, and how to conduct intake screenings, amongst other failures.

101.    The failure of Defendant Kenosha County to adequately train and supervise its correctional employees concerning several key issues such as how to deal with inmates suffering serious medical/mental health conditions and individuals in custody in need of immediate mental health care, how to recognize suicidal inmates, how to react to serious medical emergencies, how to conduct wellness checks on individuals in custody, and how to conduct intake screenings, demonstrated a deliberate indifference on the part of these Defendants as whether the failure to adequately train and supervise its correctional employees would result in the violation of the Constitutional, Civil, and Statutory Rights of individuals entrusted to their care, such as Pulera.

19

102. That the above mentioned failure to adequately train and supervise correctional employees was a direct and proximate cause of the violations of the Constitutional, Civil, and Statutory rights of Pulera.

103. That the above mentioned failure to adequately train and supervise correctional employees, and the acts and omissions of these Defendants, was a direct and proximate cause of the permanent injuries and damages suffered by Pulera.

*B. Policies, Customs, And Practices of Allowing Untrained Correctional Officers To Conduct Medical Screens and Make Decisions Concerning The Need Or Other Appropriate Medical/Mental Health Treatment – Kenosha County and David Beth*

104. Plaintiff realleges and incorporates herein by reference each and every allegation of the preceding paragraphs.

105. That the actions of the Defendants, correctional officers, and correctional employees, of allowing untrained correctional officers/employees to conduct medical screens and make decisions concerning the need for medication or other appropriate medical/mental health care were done in accordance with Defendants' regulation, decision and/or custom condoning the use of these procedures to deal with all inmates. This de facto policy was officially adopted.

106. This de facto policy of allowing untrained correctional officers/employees to conduct medical/mental health screens and make decisions concerning the need for medication or other appropriate medical/mental health care violated Pulera's Constitutional, Civil, and Statutory Rights and permitted, encourage, tolerated or ratified the actions of the Defendants and Kenosha County Jail Staff, all in a malicious or reckless disregard and/or with deliberate indifference regarding the Constitutional, Civil, and Statutory Rights of Pulera.

107. The Defendants had actual and/or constructive knowledge of each and every one of the above-mentioned policies, customs and practices and were deliberately indifferent as to whether said policies and customs would change.

20

108. That each and every one of the above mentioned policies, customs and practices was a direct and proximate cause of the violations of Pulera's Constitutional, Civil, and Statutory Rights, which eventually led to the permanent injuries and damages suffered by Pulera.

## COUNT IV
## NEGLIGENCE AGAINST DEFENDANTS: SARZANT, SAWILLA, GERBER, SLATER, REMUS, PALLAMOLLA, CLEMENS, CORSO, NEWTON, SMITH, SCHLECHT, BETH, JOHN DOE 1, JOHN DOE 5, AND KENOSHA COUNTY

109. Plaintiff realleges and incorporates herein by reference each and every allegation of the preceding paragraphs.

110. At all times material hereto, Defendants undertook and had a duty to provide Pulera with competent medical/mental health care and treatment, which would be in accordance with acceptable practices as they relate to incarcerated persons.

111. The Defendants were negligent at all times material hereto in that they, among other things, failed to provide Pulera with medical/mental health care, despite his serious need for medical/mental health treatment and medications; failed to respond appropriate to Inmate Medical Requests; failed to appropriately train correctional officers/employees to deal with individuals with serious medical/mental health issues; failed to address open and obvious deficiencies in health care; failed to address open and obvious deficiencies regarding officers making medical/mental health decisions; and, were otherwise negligent.

112. The negligence of the Defendants was a direct and proximate cause of the permanent injuries and damages suffered by Pulera.

## COUNT V
## NEGLIGENCE AGAINST DEFENDANTS VNC AND JOHN DOES 2-4

113. Plaintiff realleges and incorporates herein by reference each and every allegation of the preceding paragraphs.

21

114. At all times material hereto, Defendants undertook and had a duty to provide Pulera with competent medical/mental health care and treatment, which would be in accordance with acceptable practices as they relate to incarcerated persons.

115. At all times material hereto, Defendants John Does 2-4 were employees and/or agents of Defendant VNC and Defendant Kenosha County and were acting in the course and scope of their employment, and thus Defendant VNC is liable for the actions of Defendants Jon Does 2-4 pursuant to the Doctrine of Respondeat Superior.

116. The Defendants were negligent at all times material hereto in that they, among other things, failed to provide Pulera with medical/mental health care, despite his serious need for medical/mental health treatment and medications; failed to respond appropriate to Inmate Medical Requests; failed to appropriately train nurses/medical professionals in how to deal with individuals with serious medical/mental health issues; failed to ensure that only competent nurses and/or medical professionals were providing medical care; failed to address open and obvious deficiencies in health care; and, were otherwise negligent.

117. The negligence of the Defendants was a direct and proximate cause of the permanent injuries and damages suffered by Pulera.

## DAMAGES

118. Plaintiff realleges and incorporates herein by reference each and every allegation of the preceding paragraphs.

119. That as a direct and proximate result of the unlawful acts of the Defendants, Pulera unnecessarily suffered, and continues to incur injuries and damages including, but not limited to, the following:

      a. Serious emotional and psychological distress;
      b. Permanent brain damage and memory problems;
      c. Pain and suffering;
      d. Mental anguish;

22

e. Loss of future enjoyment of life;
f. Embarrassment, humiliation, and mortification;
g. Wage loss and earning capacity;
h. Reasonable expenses of medical care, treatment and services;
i. Constitutional violations;
j. Any and all other damages to be determined reasonable and just by the Court.

## CONDITIONS PRECEDENT

120. Plaintiff realleges and incorporates herein by reference each and every allegation of the preceding paragraphs.

121. All conditions precedent to this lawsuit have been performed or otherwise occurred.

## PRAYER FOR RELIEF

122. WHEREFORE, Plaintiff respectfully requests judgment:

   a. Awarding Plaintiff compensatory damages in an amount determined by the Jury;
   b. Awarding Plaintiff punitive damages in an amount determined by the Jury;
   c. Awarding Plaintiff reasonable costs and expenses of this action including attorneys' fees pursuant to 42 U.S.C. § 1988 and their out-of-pocket expenses; and,
   d. Granting Plaintiff such other and further relief as my be just and fair.

123. Kenosha County is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the Defendants in this corrective action because said Defendants were acting within the scope of their employment when they committed the above-mentioned unconstitutional and negligent actions.

## DEMAND FOR JURY TRIAL

124. The Plaintiff demands trial by jury.

Dated at Wauwatosa, Wisconsin this 19th day of April, 2015.

23

Respectfully Submitted,

**Judge, Lang & Katers, LLC**
Attorneys for Plaintiff


By: /s/ David J. Lang
David J. Lang
Wisconsin State Bar No. 1001218

**MAILING ADDRESS**
8112 W. Bluemound Road, Ste. 71
Wauwatosa, WI 53213
P: (414) 777-0778
F: (414) 777-0776