ZACHARY PULERA,

      Plaintiff,

      v.                                                           Case No. 15-C-461

VICTORIA SARZANT, et al.,

      Defendants.

## DECISION AND ORDER ON MOTIONS FOR
## PARTIAL SUMMARY JUDGMENT

In the early morning hours of April 23, 2012, Zachary Pulera tried to hang himself with a bedsheet while being held in custody at the Kenosha County Jail for a probation violation. Fortunately, his suicide attempt was unsuccessful. Alerted by one of the prisoners on Pulera's cellblock, correctional officers were able to cut him down before he expired, but not before he lost consciousness and became unresponsive. Pulera was transported to the Neuro-Intensive Care Unit at Froedtert Hospital in Milwaukee where he was revived.

Claiming that his suicide attempt was caused by the deliberate indifference and/or negligence of the correctional and health care staff of the jail, Pulera commenced this action against the County, the Sheriff, and various administrative staff members, supervisors and correctional officers, including two unknown County employees identified as John Doe 1 and 5, who work in the jail. ECF No. 1 at ¶¶ 7–18, 20–22. Pulera's original complaint also named as defendants Visiting Nurse Community Care, Inc. (VNCC), a private health care company that contracted with the County to provide nursing and other health care services to jail inmates, along with John Does

2 through 4 who were described as employees of VNCC and/or the County who worked at the jail and were "responsible for the safe, secure, and humane treatment of all Kenosha County Jail inmates, including Pulera, on April 21, 2012." *Id.* ¶¶ at 19, 23. Pulera claimed that the deliberate indifference of the County and its employees (collectively, the County Defendants) to his serious medical/mental health needs constitutes "cruel and unusual punishment" proscribed by the Eighth Amendment to the United States Constitution and Article I, section 6 of the Wisconsin Constitution. *Id.* at ¶¶ 92, 96. The complaint also asserted state common law negligence claims against the County Defendants, VNCC, and John Does 2 through 4. *Id.* at ¶¶ 111, 116. Based upon these allegations, Pulera sought monetary damages for, *inter alia*, serious emotional and psychological distress; permanent brain damage and memory problems; pain and suffering; loss of wages and earning capacity; cost of medical care; treatment and services; and loss of enjoyment of life. *Id.* at ¶ 119.

The VNCC nurses were subsequently identified in a second amended complaint as Sylvia Summers-Sgroi, Erica Rea, Denise Gilanyi, Markelle Reed, and Lyndsay Hauck (collectively Nurse Defendants). In addition, Dr. Karen Butler, who provided medical services to jail inmates under a contract with her employer, Advanced Correctional HealthCare, Inc. (ACH), along with ACH were added as defendants. Pulera's negligence claims against Dr. Butler and ACH have since been dismissed but his deliberate indifference claim against Dr. Butler and his *Monell* claims against ACH remain. The court has jurisdiction over Pulera's § 1983 claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. The case is before the court on the motion of VNCC and the Nurse Defendants for partial summary judgment and Dr. Butler's motion for summary judgment on all claims. For the reasons that follow, the

motion of VNCC and the Nurse Defendants will be granted-in-part. Counts I and II will be dismissed as to VNCC, and Count V will be dismissed as to the Nurse Defendants. Dr. Butler's motion will be granted in full and all claims against her will be dismissed.

## LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## BACKGROUND

Pulera was arrested in the early morning of April 21, 2012, on a charge of felony bail jumping for violating the conditions of his bond by consuming alcohol. Dr. Butler was the physician for the Kenosha County Pre-Trial Facility at the time Pulera was detained there under a contract the County had with ACH. The County also had a contract with VNCC, which provided

nursing services to inmates. The Nurse Defendants were all employees of VNCC who worked at the jail during the time of Pulera's confinement. Dr. Butler was physically present at the facility one day a week, generally on Tuesdays, and could be reached via telephone when not physically present at the facility. When she worked remotely, Dr. Butler did not have access to patient medical records and relied on the medical staff present at the facility to report to her the relevant information when making medical decisions.

A medical screening of Pulera was conducted when he entered the facility on April 21, 2012. The screening indicated that Pulera appeared to be under the influence of intoxicants, but there were no indications that he appeared to be anxious or depressed.

At some point in the afternoon of April 21, 2012, Pulera submitted a health service request (HSR) that stated "I need my [Clonazepam] and my [Tramadol]. My family is dropping them off. For my pain, [anxiety], and [depression]." ECF No. 150-4 at 2. Dr. Butler had received a prescription for both of those medications prior to his arrest. Later that day, at 4:35 p.m., a nurse responded "[w]hile you are here you are under the care of the jail Md. Jail MD will be notified of medications brought in." *Id.*

Dr. Butler was first contacted by the nurses at the facility regarding Pulera via telephone around 5:00 p.m. on April 21, 2012. Earlier that day Pulera's family dropped off his two prescriptions at the facility—one for Clonazepam and one for Tramadol. It is routine for the nurses at the facility to count and log the number of pills for a prescription that is dropped off and compare it to the prescribed amount to be taken and the date the prescription was filled so that Dr. Butler can determine whether a patient may have access to their medication while at the facility. Both of Pulera's prescriptions had been filled one-day prior on April 20, 2012. Pulera's Clonazepam

4

prescription called for him to take one tablet twice a day. When the nurses conducted their count, twenty-six of the original sixty pills were gone. Pulera's Tramadol prescription called for him to take two tablets twice a day. Thirty-nine of the original 120 tablets were gone when the nurses conducted their count. Dr. Butler declined to allow Pulera access to his medication, given the discrepancy between the number of pills remaining in his prescriptions and the number that were unaccounted for given the prescribed dosage.

Later that day Pulera submitted a second HSR that stated "[m]y [heart hurts]. I [cannot] breath[e]. I need my [medications] or I can die. My [heart] is pounding. They are here. I need you to please bring me my [medications] [A.S.A.P.]. Thank you." ECF No. 150-4 at 2. At 5:55 a.m. on April 22, 2012, a nurse responded "[t]he jail MD has not set up any medications at this time." ECF No. 150-4 at 2.

Pulera submitted his third and final HSR around 2:20 p.m. on April 22, 2012. It stated "I [cannot] eat, sleep. I am [throwing] up and I am dizzy. I [cannot] breathe. I need my blood [pressure] [taken], please see me. My brother and mother just died. I need my [Clonazepam]. I am sick." ECF No. 150-5 at 1. Dr. Butler was contacted in response to this HSR and ordered that Pulera's vitals be checked and that she be contacted again if any abnormalities were found. A nurse informed Pulera that his vitals would be checked in response to his HSR. Pulera's vitals were taken at 8:00 p.m. that evening and showed no indications that anything was wrong. Pulera attempted to commit suicide by trying to hang himself in his cell around 1:40 a.m. on April 23, 2012.

Pulera claims that VNCC, the Nurse Defendants, and Dr. Butler violated his constitutional rights by failing to respond to his medical/mental health needs. He specifically claims that Dr. Butler "refused to place Pulera back on his medication on April 22nd, failed to place him on

required protocols for alcohol or withdrawal, and failed to take any other action after ordering

Pulera's vitals taken." Pl.'s Resp., ECF No. 147 at 11. Pulera also claims that VNCC and the Nurse

Defendants were negligent in their failure to properly respond to his mental health needs while he

was held at the Kenosha County Jail.

## ANALYSIS

### A. VNCC and the Nurse Defendants

The second amended complaint appears to assert four separate claims against VNCC and

the Nurse Defendants. Count I alleges that the defendants collectively violated Pulera's rights under

the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution in their

"deliberate indifference to and complete failure to address Pulera's serious medical/mental health

needs . . . ." ECF No. 59 at ¶ 102. Count II asserts essentially the same claim against the defendants

collectively under Article I, section 6 of the Wisconsin Constitution. Counts I and II also include

allegations suggesting that they also include claims under *Monell v. New York City Dept. of Social

Services*, 436 U.S. 658 (1978), which of course makes no sense for defendants sued in their

individual capacities. *Id.* at ¶¶ 103–06, 109–11. Apparently for this reason, and because Count III

expressly asserts a *Monell* claim against all of the defendants, the parties have construed Counts I

and II as not including *Monell* claims and Count III as applying to only the corporate or policy-

making defendants. Finally, Count V asserts a claim for negligence against VNCC and the Nurse

Defendants. In their motion for partial summary judgment, VNCC and the Nurse Defendants seek

dismissal of Count V in its entirety and Counts I and II as to VNCC.

VNCC asserts that Pulera's § 1983 claims against it in Counts I and II of Pulera's second

amended complaint alleging that it is liable for the Nurse Defendants' deliberate indifference under

6

a theory of *respondeat superior* should be dismissed because "[*r*]*espondeat superior* liability does not apply to private corporations under § 1983." *Shields v. Ill. Dept. of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Even though Count II arises under the Wisconsin Constitution, the same argument applies since the Wisconsin Supreme Court interprets the parallel provision of the state constitution consistently with the United States Supreme Court's interpretation of the Eighth Amendment. *State v. Ninham*, 2011 WI 33, ¶ 45, 333 Wis. 2d 335, 797 N.W.2d 451 ("Generally, we interpret provisions of the Wisconsin Constitution consistent with the Supreme Court's interpretation of parallel provisions of the federal constitution."). Pulera concedes the point in any event and agrees that under *Shields*, Counts I and II should be dismissed as to VNCC. Pl.'s Resp., ECF No. 129 at 4. Given the unequivocal holding of *Shields* and Pulera's concession, the court grants the Defendants' motion for partial summary judgment with respect to VNCC in Counts I and II of Pulera's second amended complaint.

Defendants next argue that Pulera's negligence claims contained in Count V of his second amended complaint should be dismissed in their entirety. Regarding the Nurse Defendants, they argue that Pulera's negligence claim against them is barred by the statute of limitations because the Nurse Defendants, originally named as John Does in Pulera's complaint, were not identified and named by Pulera until August 29, 2016—more than a year after the statute of limitations ran—and that Pulera's second amended complaint does not relate back to his timely filed initial complaint. Pulera again does not contest the defendants' argument and concedes that his negligence claims against the Nurse Defendants are barred by the statute of limitations. Accordingly, the court grants the defendants' motion for partial summary judgment with respect to Count V as to the Nurse Defendants. Notwithstanding his concession that his negligence claims against the individual

Nurse Defendants are barred by the three-year statute of limitations, Pulera argues that his

negligence claim against VNCC in Count V remains. Pulera argues that VNCC is vicariously liable

for the actions of the Nurse Defendants under the doctrine of *respondeat superior* and that VNCC

was more generally negligent in its own right in failing to supervise and train its employees to

provide proper medical/mental health care. VNCC, on the other hand, argues that because the

negligence claims against VNCC's employees are dismissed, there is no longer any basis upon

which VNCC can be held liable in negligence. VNCC contends that Pulera's *respondeat superior*

claim against VNCC is wholly dependent on the alleged negligent acts of the Nurse Defendants.

*See Kerl v. Dennis Rasmussen, Inc.*, 2004 WI 86, ¶ 18, 273 Wis. 2d 106, 682 N.W.2d 328

("Vicarious liability under respondeat superior is 'liability that a supervisory party (such as an

employer) bears for the actionable conduct of a subordinate or associate (such as an employee)

because of the relationship between the two parties.'" (quoting  Black's Law Dictionary 927 (7th

ed.1999)). Because Pulera has conceded his underlying negligence claim against the Nurse

Defendants is time barred, rendering their conduct no longer actionable, VNCC contends that there

is no underlying act for which VNCC can be vicariously liable for under the doctrine of *respondeat*

*superior*.

VNCC's argument is unconvincing. Pulera's negligence claims against the individual Nurse

Defendants are barred because he failed to sue them within the time allowed under the statute of

limitations. The same is not true of VNCC. VNCC was named in the original complaint that was

filed within the three-year statute of limitations, and so that defense is not available to it. The fact

that Pulera's claims against the Nurse Defendants whose conduct allegedly renders VNCC liable

via *respondeat superior* are time barred does not mean that his claim against VNCC is time barred.

8

It just means they cannot be held liable, not that they were not negligent. *See, e.g.*, *Hedquist v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 272 Ga. 209, 210, 528 S.E.2d 508 (Ga. 2000) ("A dismissal with prejudice of the action against the allegedly negligent employee does not impose a bar to further litigation against the vicariously liable employer because the dismissal with prejudice adjudicates only the non-liability of that defendant to the plaintiff [and] is not the equivalent of a judgment rendered in favor of the plaintiff against the defendant.") (internal quotation omitted); *see also Martin v. Mid-Cal. Express*, 2003 OK CIV App 106, ¶ 18, 83 P.3d 898 ("We hold, consistent with the rules pronounced above, that even though the statute of limitations has run as to the servant/tortfeasor, thus rendering him immune from further suit, Plaintiff may nonetheless continue to pursue a claim against the vicariously liable master."). There is no reason to believe that Wisconsin law is otherwise. In addition, the second amended complaint also alleges that VNCC is negligent in its own right in failing to properly train nurses and ensure that only competent nurses were providing the care it contracted to provide. ECF No. 59 at ¶ 130. VNCC is therefore not entitled to dismissal of Count V just because Pulera is barred by the applicable statute of limitations from asserting a claim against the Nurse Defendants.

Alternatively, VNCC argues that Pulera's negligence claim should be dismissed because neither VNCC nor the nurses it employed are subject to the Wisconsin statute governing medical malpractice claims. Although Count V is entitled "negligence" against the Nurse Defendants, VNCC notes that the second amended complaint erroneously alleged that the Nurse Defendants were "Health Care Providers pursuant to Wis. Stat. § 655.001." ECF No. 59 at ¶ 127. Based on this allegation, VNCC argues that Count V is actually a claim for medical malpractice under

Chapter 655 of the Wisconsin Statutes. Since neither VNCC, nor the Nurse Defendants are "health care providers" as that term is defined by the statute, VNCC argues that Pulera's claim fails.

The fact that the Nurse Defendants are not covered by Wisconsin's medical malpractice statute does not mean they cannot be liable for negligence, however. It simply means that whatever liability they may have is not governed by Chapter 655. The reference to Section 655.001 in the complaint does not preclude a claim for common law negligence. "The point of a notice pleading standard is that the plaintiff is not required to plead either facts or legal theories." *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006). Pulera alleged in his second amended complaint that VNCC and the Nurse Defendants

> were negligent at all times material hereto in that they, among other things, failed to provide Pulera with medical/mental health care despite his serious need for medical/mental health treatment and medications; failed to respond to appropriate Inmate Medical Requests; failed to appropriately train nurses/medical professionals in how to deal with individuals with serious medical/mental health issues; failed to ensure that only competent nurses and/or medical professionals were providing medical care; failed to address open and obvious deficiencies in health care; and were otherwise negligent.

ECF No. 59 at ¶ 130. This is a statement of a common law negligence claim regardless of whether Chapter 655 applies. For this reason as well, VNCC's motion for summary judgment as to Count V will be denied.

## B. Dr. Butler

Unlike VNCC and the Nurse Defendants, Dr. Butler seeks summary judgment on the merits of Pulera's claim against her. She claims that the undisputed facts establish her right to judgment of dismissal as a matter of law.

10

At the outset, however, the parties dispute what standard governs Pulera's constitutional claim against Dr. Butler. Pulera argues that because he was arrested without a warrant and there is no evidence in the record that there was any probable cause determination related to his arrest, *see* ECF No. 150-2 at 3–4, his claim against Butler should be analyzed under the Fourth Amendment. The Seventh Circuit has held that "'the Fourth Amendment governs the period of confinement between arrest without a warrant and the [probable cause determination],' [*Villanova v. Abrams*,] 972 F.2d 792, 797 (7th Cir. 1992), and [the court has] since applied the Fourth Amendment's 'objectively unreasonable' standard to . . . 'medical care' claims brought by arrestees who have not yet had their *Gerstein* hearing." *Currie v. Chhabra*, 728 F.3d 626, 629–30 (7th Cir. 2013). On the other hand, Dr. Butler argues that Pulera was being held on a probation hold issued by the U.S. Marshal, which implies he had previously been convicted of a crime, and thus the Eighth Amendment applies. ECF No. 149 at ¶ 3.

Of course, the U.S. Marshal does not issue probation holds. It appears from this court's records, of which I take judicial notice, that Pulera was awaiting sentencing in federal court for distribution of heroin at the time of his arrest, but was not in federal custody. *See United States v. Zack Pulera*, Case No. 11-cr-47-PP-10, ECF No. 129. Although it would be a matter of record, Dr. Butler has offered no evidence that either a federal or state judicial officer had determined there was probable cause and authorized Pulera's custody at the time of the events giving rise to the action. I will therefore analyze Pulera's claim under the Fourth Amendment objective reasonableness standard.

Pulera's claim fails to satisfy even this standard. Dr. Butler's refusal to place Pulera back on his medication was not unreasonable given the significant discrepancy between the number of

11

pills that should have been in his prescription bottles had he complied with the instructions of his doctor and the actual count. For this reason, and in the absence of any indication he was planning to harm himself, Pulera's criticism amounts to little more than hindsight. According to the nurse's count, his prescriptions, which had been filled just hours before his arrest, were short twenty-four Clonazepam pills and thirty-five Tramadol pills from the number there should have been had he been properly taking his medications. This fact, together with his reported abuse of alcohol at the time of his arrest, reasonably warranted the decision to at least initially withhold the medication.

Pulera's own expert does not dispute that the initial decision to withhold the medication was reasonable. Dr. White essentially claims that Dr. Butler should have taken additional steps to insure that Pulera was not experiencing drug withdrawal or had need for a substitute medication. ECF No. 150-9 at 2. But this hardly shows her decision to put a hold on his medication was unreasonable. If Pulera's problems had persisted, Dr. Butler might well have done more. But Pulera was arrested in the early morning hours of April 21, 2012, a Saturday. Dr. Butler was first contacted regarding Pulera later that day at approximately 5:00 p.m. for guidance on the medications that had been dropped off for him. ECF No. 149 at ¶¶ 15, 16. Based on Pulera's apparent noncompliance with the instructions as to prescribed doses, Dr. Butler concluded it would be dangerous to allow him access to his medications and directed the nurse not to dispense them to Pulera.

Dr. Butler was not contacted again until the following day, Sunday, April 22, 2012, at 4:45 p.m. At that time, a nurse presumably conveyed to her Pulera's health services request reporting that he was unable to eat or sleep, and that he was throwing up, dizzy, and could not breathe. He stated he needed his blood pressure checked and reported his brother and mother had just died, and he needed his Clonazepan. ECF No. 150-5 at 1. Dr. Butler instructed the nurse to check Pulera's

vitals and report back if there was anything abnormal. Pulera's records reflect his blood pressure, pulse respiratory rate, temperature, and oxygen level was checked at 8:00 p.m. and found to be within normal limits. ECF No. 149 at ¶¶ 37–39. That was the last contact Dr. Butler had concerning Pulera until after his suicide attempt in the early morning hours of April 23, 2012. At no time did Pulera suggest to anyone at the Kenosha County Jail that he was thinking of harming himself, and no such report was ever communicated to Dr. Butler. *Id.* at ¶ 57. In fact, his only complaints were over physical discomfort, and his request that his blood pressure be checked suggests that he wanted to live. Under these circumstances, there was no reason for Dr. Butler to conclude he was in need of immediate mental health treatment.

Pulera also argues that Butler failed to follow two established jail procedures and that, as a result, her treatment of him was unreasonable. More specifically, Pulera cites the procedures for treatment of inmates suffering from alcohol or drug intoxication and withdrawal. Both policies set forth that treatment under the policies be determined based on individualized needs and symptoms of the patient. Policy–J-G-06 Intoxication & Withdrawal, ECF No. 150-12 at 1 ("All inmates are screened for alcohol/drug use and withdrawal. Initial treatment is based on clinical assessments that are completed by the medical staff."); Policy–J-G-08 Inmates With Alcohol & Other Drug Problems, ECF No. 150-13 at 1 ("It is the policy of these facilities that the management of chemically dependent inmates is individualized under the direction of the jail Physician according to the substance abused and the degree of dependence."). Given that Pulera was under observation by correctional officers, was observed by them to be "quiet, cooperative and compliant offering no obvious indication of having any problems," ECF No. 150-8 at 6, and did not display objective signs that he was going through withdrawal, Butler's treatment of Pulera was reasonable.

13

Simply put, when Butler made her decision there were no signs that Pulera was suffering from a serious mental health condition and no reason to expect that denying him access to his medication would lead to his attempted suicide. As Pulera's expert acknowledges, "[Pulera] did not have to receive his medication simply because he asked for it, and staff cannot be expected to respond to information not documented to be reported to them." ECF No. 150-8 at 10. Although Dr. Butler did not proceed to the jail and inquire of Pulera what happened to the missing medication at the time she first was told of it, her choice not to does not render her April 21, 2012 decision to deny Pulera access to his medication at that time unreasonable. *See Florek v. Village of Mundelein, Ill.*, 649 F.3d 594, 600 (7th Cir. 2011) (holding under the Fourth Amendment's reasonable analysis that officer's decision to not give arrest suspect aspirin when "her outward appearance did not put officers on notice of her medical condition" was reasonable as there is no requirement to "provide what hindsight reveals to be the most effective medical care"); *see also Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (the Constitution is not a medical code requiring officers to administer or allow specific treatments). It thus follows that Pulera's claim against Dr. Butler fails. Dr. Butler's motion for summary judgment is therefore granted.

## CONCLUSION

For the foregoing reasons, VNCC and the Nurse Defendants' motion for partial summary judgment (ECF No.116) is **GRANTED-IN-PART**. Counts I and II are dismissed as to VNCC, and Count V is dismissed as to the Nurse Defendants. Dr. Butler's motion for summary judgment (ECF No. 135) is **GRANTED** in its entirety.

**SO ORDERED** this  9th  day of January, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
